UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEWAYNE MCGUIRE,
         Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
         Defendant.
_____



**DECISION & ORDER**
17-cv-6687-JWF

## Preliminary Statement

Plaintiff Dewayne McGuire ("plaintiff" or "McGuire") brings this action seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his application for disability benefits pursuant to Title II of the Social Security Act. See Compliant (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 10, 14. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

On April 21, 2015, plaintiff protectively filed an application for disability insurance benefits. Plaintiff's application was initially denied. Administrative Record (Docket # 8) ("AR"), at 61-75. On July 14, 2016, plaintiff appeared with

1

an attorney before Administrative Law Judge Paul Greenberg ("the ALJ"). AR at 28-60. The ALJ issued an unfavorable decision on January 2, 2017. AR at 14-23. Plaintiff appealed the ALJ's decision to the Appeals Council ("the AC") and the AC denied plaintiff's appeal on August 8, 2017, making this the final decision of the Commissioner. AR at 1-6. McGuire commenced this federal court action on October 3, 2017. Docket # 1. Plaintiff moved for judgment on the pleadings on April 9, 2018 (Docket # 10), and the Commissioner filed her motion for judgment on the pleadings on June 8, 2018 (Docket # 14).

For purposes of this Decision and Order, the Court assumes the parties' general familiarity with the medical evidence, the hearing testimony, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Discussion

Although an ALJ is free to choose between properly submitted medical opinions, he may not substitute his own lay opinion for those of medical experts. Balsamo v. Chater, 142 F.3d 75, 81 (2d

2

Cir. 1998). In his decision, the ALJ considered the opinion evidence from three medical experts – plaintiff's treating physician Dr. James Coleman, consulting examiner Dr. Gilbert Jenouri, and neurologist Dr. James Metcalf.

As the plaintiff's treating physician, Dr. Coleman's opinion ordinarily should be given the most weight by the Commissioner. Indeed, the "treating physician rule," set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources."). Here, Dr. Coleman, made an effort to assist the ALJ by personally completing a Medical Source Statement which organized his findings and opinions into a format that focused on the issues relevant to a disability determination. See AR at 382. For example, on the report Dr. Coleman hand wrote his diagnosis (cervicalgia and bulging/herniated disk in neck), his prognosis (guarded), plaintiff's symptoms (pain in neck, decreased range of motion, pain in left chest and left arm), described the nature of plaintiff's pain (constant sharp and burning pain, aggravated by use of left arm) and identified various clinical findings and tests that supported his objective findings. AR at 382. Dr. Coleman

3

then opined, among other things, that in his opinion as treating physician (1) plaintiff's impairments have or will last longer than twelve months, (2) plaintiff is not a malingerer, (3) plaintiff's pain would frequently interfere with his ability to concentrate or perform even simple work tasks, (4) plaintiff's impairments preclude him from walking even a single city block, sitting more than 10-15 minutes at a time, standing more than 10 minutes at a time, (5) he would need unscheduled breaks from work every 20 minutes, (6) plaintiff could not move his neck, look down, look up, twist his body, bend, crouch or stoop, (7) plaintiff's impairments were severe enough that he would miss more than four days of work per month. AR at 382-85. It should be noted that Dr. Coleman's functional capacity findings and opinions were fully consistent with plaintiff's hearing testimony.

The ALJ did not adopt Dr. Coleman's opinions – and gave them what he vaguely described as "partial weight." Our circuit has been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must <u>explicitly</u> consider, <u>inter alia</u>: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good

4

reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)(emphasis added)(internal citations, quotations and alterations omitted). Our circuit has also consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)("The SSA recognizes a "treating physician" rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam)("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

The ALJ's reasons for not giving controlling weight to the opinion of Dr. Coleman were far from comprehensive and not very persuasive. First, the ALJ stated that "[a]lthough a treating physician would normally be entitled to greater weight, here the assessment is in the form of a 'checklist' that provides little

5

insight into the rationale behind the checkmarks." AR at 21. The ALJ's description of Dr. Coleman's Medical Source Statement is unfair to plaintiff and Dr. Coleman for several reasons. First, while it is true that the report utilizes several check-boxes, it also includes many fields in which Dr. Coleman provided written narrative, including symptoms, diagnosis, prognosis, description of pain, description of clinical findings and objective signs, and treatment and response. Indeed, this particular format provides much more room for narrative responses than many forms this Court has seen utilized in disability determination cases. But even if the form required fewer narrative fields, "[t]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." Trevizo v. Berryhill, No. 15-16277, 2017 WL 4053751, at *8, n.4 (9th Cir. Sept. 14, 2017).

Although not necessary here, this Court could take judicial notice of the fact that when a relevant opinion or assessment "box" is checked by a medical professional and the checked finding supports the ALJ's determination, the Commissioner has no hesitancy in relying on that "checked" finding in arguing to the Court that the claimant is not disabled. The key to the usefulness of a checked box form is determining whether the opinion expressed is relevant to a determination of disability and then assessing

6

what data the provider would have in deciding what box to "check." Too many times treating physicians refuse or neglect to respond to requests (from both plaintiff and the Commissioner) for reports and opinions needed to fairly evaluate disability determinations. The fact that Dr. Coleman took time out from a busy internal medicine practice and filled out a five-page form requiring answers to dozens of questions specifically intended to assist the ALJ in making a disability determination should be appreciated, not dismissed as being weak evidence. In the context of a busy treating physician who has seen a claimant multiple times and who maintains office notes and test results to support the opinions expressed, the use of a checked box format is hardly surprising and certainly not disqualifying. If the ALJ felt the form lacked sufficient narrative, he could have contacted Dr. Coleman and requested additional information. But trying to justify the rejection of Dr. Coleman's otherwise relevant opinions based on the form on which they were rendered was error.

Interestingly, the ALJ also assigned the same "partial weight" to the opinions of Dr. Gilbert Jenouri, a consultative examiner chosen by the ALJ for a post-hearing orthopedic evaluation. In a completely narrative report, Dr. Jenouri diagnosed plaintiff with low back and neck pain and paresthesia (numbness) in his left upper extremities and lower extremity. Based on his examination, Dr. Jenouri's medical opinion was that

7

plaintiff had "[s]evere restriction walking, standing and sitting long periods; bending, stair climbing, lifting, and carrying." AR at 389. (emphasis added). Although expressed in a narrative form, Dr. Jenouri's opinions and functional limitations were remarkably consistent with the "box checking" findings and restrictions Dr. Coleman expressed in his report. See AR at 384-85.

The only medical opinion the ALJ gave significant weight to was what the ALJ referred to as an "assessment" completed by neurologist James Metcalf, M.D. AR at 378-80. That "assessment" was simply Dr. Metcalf's treating notes from the single occasion he evaluated plaintiff. The ALJ acknowledged that Dr. Metcalf's assessment was "not an opinion of functional capacity." AR at 21. However, the ALJ determined that the assessment confirmed his determination that plaintiff was not disabled because Dr. Metcalf opined that the objective imaging (an MRI) "did not support the degree of limitation alleged by the claimant." AR at 21. Although not acknowledged by the ALJ, Dr. Metcalf's opinion had a significant caveat. As Dr. Metcalf himself acknowledged, when he met with plaintiff he did not have the benefit of plaintiff's most recent MRI. Indeed Dr. Metcalf stated he would "need to view the most current MRI" to "best evaluate this condition." AR at 380. Dr. Metcalf's view that more recent test data was needed to properly assess plaintiff's medical condition is far from a determinative evaluation of plaintiff's limitations upon which the

ALJ should formulate an RFC that is inconsistent with all the other medical opinions in the record.

This error was not harmless. The more recent MRI report that Dr. Metcalf stated he needed to review was taken on November 28, 2016. AR at 406. The objective findings of this later MRI confirmed (1) "decreased signal intensity" at L1-2, L4-5 and L5-S1 disc spaces "consistent with disc desiccation and degenerative disc disease," (2) narrowing of disc space at L1-2 and L5-S1, and (3) posterior disc bulging at L5-S1 and bilateral foraminal narrowing at L5-S1. AR at 406. Thus, on remand, the ALJ should also reconsider his reliance on an opinion that Dr. Metcalf conceded was not premised the most recent MRI evidence.

Finally, in discounting plaintiff's credibility, the ALJ relies on boilerplate language that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 18. However, "an ALJ is required to assess a claimant's credibility before determining his RFC and identify which statements about the intensity and persistence of his symptoms are consistent with specifically identified evidence in the record." Box v. Colvin, 3 F. Supp. 3d 27, 48 (E.D.N.Y. 2014)(internal quotation and citations omitted). The ALJ must also "specify those statements that the ALJ determines are

9

inconsistent with medical evidence in the record and explain why he chooses to discredit them with reference to the applicable regulatory factors." Id. The ALJ did not do so here.

## Conclusion

The RFC adopted by the ALJ is inconsistent with the exertional limitations identified by both the treating physician, the consultative examiner and described by the plaintiff. "An RFC determination is subject to the overarching requirement that an agency finding may only withstand judicial scrutiny if there is substantial evidence in the record to support each of its elements." Crysler v. Astrue, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008). In addition, the neurological "assessment" given "significant weight" by the ALJ was made with the explicit caveat that it was not based on the most current MRI. For the foregoing reasons, the plaintiff's motion (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 12, 2019
Rochester, New York

10